Good morning. Bob Stumpf for U.S. Security Associates. I'd like to reserve five minutes. And with the Court's permission, I'd like to dedicate this argument to the memory of Sanford Sandy Spetkov. Mr. Spetkov was well known to this Court. He argued in more than 100 appeals to the Court. He's a beloved member of the Bar, and we will miss him a great deal. Now, turning to the case at hand, the basic claim in this case, at least as far as this appeal is concerned, is that my client, U.S. Security Associates, failed to give its employees, who are security guards, the meal period breaks that are required under California law. And very specifically, the claim is all or virtually all of the employees, security guards, were required to take on-duty meal breaks where they were not fully relieved from all of their duties. That's what your client's own person, most knowledgeable, said, right? Well, he sort of changed it with a declaration. And if you know, I looked at that point, and I went back and I looked at the 103 declarations. I was, okay. I'm not even talking about the declarations. I'm talking about his testimony. All right. The record also has 103 declarations to be submitted. Right. Fourteen of those declarations are from multi-guard posts. So more than 10 percent of the declarations of the 103 were, I mean, those are the facts in the record. I can't, you know, there's a conflict in the evidence, but there we are. But the point here is class certification, not the merits of the case. And the question is, how do you certify a class when we're dealing with over 700 different locations? Let me ask you this. Isn't so I understand, and you can correct me if I'm wrong, but I understand their claim to be an attack on the policy. That is, every employee hired, as I understand it, had to sign at the get-go one of these written waivers. Is that right? That is right. But it doesn't determine the class issue. It doesn't determine the case. But, no, but I'm trying to conceptualize their case. I mean, you know, like so many of these things as the law has been changing, especially in light of Walmart and other cases. The arguments have kind of shifted a bit. But you have to go back to the heart of their claim. And I may be misreading their complaint or not following their arguments properly. But I understand what their attack is, is on this kind of overall policy. Everybody has to sign a written waiver, even before they get assigned out to a particular location. Your Honor, the claim is that the employees were not given the meal periods required under California law. That's the substantive claim. It is true that all or virtually all of the guards do sign these on-duty meal period agreements. But that's just the starting point of the analysis. Because then what you have to do at each of these locations is to determine whether or not. Well, why would the defendant require them to sign at the get-go? Because virtually all of the posts, or most of the posts, do require on-duty meals. Also, employees don't stay in one place. They move. Well, is it the nature of, just think at the same, I'm trying to conceptualize this. Because, you know, you do, there is, the way the regulation is written, you do have a, and your argument that you have a defense about the nature of the work. But I'm trying to look at it from the claim that they're trying to present and the method in which they're trying to litigate that claim. So as I understand it, there's this policy, right? And then it's supplemented by this factual record that there may be some dispute about that suggests that the policy is indeed implemented. And why isn't your claim that the nature of the work, why shouldn't that be evaluated sort of at the same level in which they're forced to sign a written waiver? Because you simply can't do it, Your Honor. Why? Because you have to determine on a location-by-location basis whether the nature of the work at that location, in fact, requires an on-duty meal. And that's a class that's simply, it's a determination that simply can't be made on a class-wide basis. Maybe this will help. Judge Kobayashi decided the case. I'm sure you remember it. It's called Dillon v. Marriott. And there, the policy was determinative. The hotel was charged with not making proper disclosures about how service charges were handled. What the employees did or didn't do didn't matter. It didn't matter at all. The question was, was the policy lawful or unlawful? And so Judge Kobayashi certified the class. I have no quarrel with that. We have a policy, yes, and that is this on-duty meal period. But you still have to look at what the employees actually did. Because if an employee signed an agreement and was at a location that required an on-duty meal because of the nature of the work, there's nothing wrong with that. The policy is perfectly appropriate. So there are policies and there are policies. But the touchstone is to resolve the claim, you have to look at the conduct and circumstances of the employees. That was the phrase that Judge Kobayashi used. In this case, of course you have to do that. For example. But not at any location where there's just a single guard, right? No, that's my question. Excuse me, with respect. Yeah, but why not? If their job is to guard and they're at a place where they're the only person, how are they going to take an off-site meal break for 30 minutes? Well, I went back and I, again, looked at the declarations. There were 21 single guard posts where guards did take off-duty meals from time to time. You say, how can it happen? It can happen if there are substitute guards to take over for them. It can happen where customers allow that to happen because the nature of the work doesn't require somebody to be there every minute. It can happen where some of the other customers have their own staff who will sort of watch the post while these people are out. My point is it varies. Okay, but that's why I go back to the testimony of your client's person most knowledgeable. Why is it an abuse of discretion for the district court to rely on a guy who comes in and says, at 99.9 percent of these 700 locations, there's a single guard and they cannot take off-site meal breaks? I don't think he said the second thing, Your Honor. And I'm pretty sure he didn't say that. But if you look at the declarations, as I did very closely, we have 21 of the 103 where the witness says, under oath, I took off-duty meals from time to time. So what you have to do, you have to put each person on the stand. You have to ask them three questions. Number one, did you take on-duty meals or off-duty meals? That's question number one. Number two, what was your job? Did you eat and strike? Did you take off-duty meals? If not, where did you work? And then what was the nature of the work at that location? And we had some people who unloaded patients from life support helicopters. We have people that work at senior citizen centers. We have 700 different locations. And, Judge Gorbachev, I would just ask you the rhetorical question. As a trial judge, how would you determine the nature of the work at 700 different locations, except by asking the people what they did? But that's where we depend on the declarations. And were you saying that any of those declarations said that at all locations they were given these off-duty meals? I don't think so. I couldn't find anything that indicated that. No, and that's the point. Some do, some don't, and everything in between. And that's the kind of a determination you can't make on a class-wide basis because common issues do not predominate. Individual issues are the whole nature of the ballgame. It's as far away from your villain versus Marriott case as you can possibly get. Right, well, that's one hotel, one location. Right. And there's something in between. I mean, I think the easiest case is your case where we have a common policy and the only issue is the policy. In the middle is a case called West versus Circle K. It was decided out of the Eastern District. And there was no policy that you could point to. But you could point to the fact that every Circle K location was pretty much like every other Circle K location. So the nature of the work in that context could be determined on a class-wide basis because it was all the same. In our case, we have a policy which is not unlawful, and we have an incredible variety of factual differences between how this employee and this guard and this guard and this guard, and the only way you can find out is to ask the guards. And if that's true, you simply can't do it on a class-wide basis. That's the basic error the court made. Do you think the court didn't have the benefit of Walmart? Walmart is helpful. I don't think it dramatically changes the context. I would urge the court to follow its own precedents. I think if I were going to read one case or were going to cite one case in my opinion to follow Justice Piazza's lead, I would talk about In re Wells Fargo Mortgage Associates. There, there was a common policy of classifying employees as exempt. Yeah, but then the plaintiffs were primarily relying on that policy without any sort of factual record to see how it in fact played out. Well, in here, the district courts. As Judge Watford and Judge Kobayashi pointed out, here we have some record, And not only that, everybody who apparently gets hired by this particular defendant has to sign one of these waivers. Now, there's a reason for that. Well, the reasons I indicated from a factual standpoint is that people don't stay in one place. Some places, the nature of the work requires on-duty meals. Some do sometimes. Some do most of the time. But some do all of the time. And the point is, it's an incredible array of differences. You can't do that on a class-wide basis. Well, by the waiver, they're actually treating everybody the same, though. Everybody starts at the same place. Like you say, there may be some places where they have other substitute guards and things like that. So that's going to affect their off-duty or off-site meal. But they treat everybody the same. Isn't that the commonality, this waiver? It's a necessary but not sufficient condition for my client to prevail. For example, if an employee signed an on-duty meal but was at a post where the nature of the work did not require the employee to take an on-duty meal, that employee would have to be paid. That would be score one for the plaintiff. But at another location where the nature of the work did, the defense prevails. And everything in between on these 3,600 places. But you don't know unless you ask the employee, well, where did you work, what did you do, did you take on? It's an individualized determination. And there's a wonderful phrase in the Bonoldi case that says, does the common issue ease the burden of making individual inquiries? The fact that we have these on-duty meal agreements does not ease the course of burden. You still have to ask the employees, what did you do, what was your job, could you leave, could you be replaced? There's a five-factor test that the LLC uses. I mean, if you want to really know what you'd have to do in the nitty-gritty, you'd have to ask each employee each of those five factors. And that's why it's simply not appropriate for class treatment. Okay. Do you want to save some time for rebuttal? I do. Thank you, Your Honor. Thank you. Good morning, Your Honors. Kenneth Yun for the Respondents. May it please the Court. The district court made the correct decision, just looking at the facts, it's the correct decision, regardless of the standard, which is, by the way, as the Court has noted, an abuse of discretion standard. The district court found that the PMK of the United States Security Associates gave no indication that on-duty meal periods were required for reasons other than the single post-staffing model, in other words, an inability to be relieved of work, such that predominance has been defeated. The company chose, and the testimony of Mr. Flory is consistent with that policy and practice that they implemented that choice, to have a single-staff model that's common amongst, depending on the testimony, but basically everybody at the company, much greater than the standard required, which is simply predominance. This is 99.9% to use his words at some point. Well, what about counsel's representation in terms of just the declarations that are before the Court? More than 10% of them were multi-guard posts. If you have two people at, well, first, that's a definitional vagueness that I think the district court weighed and found that that, the district court found that not to be the case. Even if a person worked at a location where there's another person at U.S. Security Associates at that location, that doesn't mean there are not two single posts. Just because there's two people doesn't mean one person can cover the other. You can have a post where there's two guards. Neither guard can leave his post at any time. You have a guard at the front, guarding the front entrance of a court, well, the front entrance of a building, and you have a rear guard guarding the rear entrance of the building. The first guard can't cover the second. Essentially, it's a single-post shift, even though they might be on a technically multi-post in some colloquial definition of the declarant, which, importantly, these 103 declarants are simply security guards. They're not the testimony of the actual company, the designated witness for the company. I think it's hardly an abusive discretion for a district court to weigh the evidence of a company in live testimony versus 103, some smattering of 103 cherry-picked declarations with no basis of scientific evidence allowing for their admissibility. In particular, the 103 declarations are not, there's no evidence that they were selected at random. There's no evidence that there's anything but the company choosing the best 103 to put before the court. And even the best 103 don't come anywhere near less than 40. There's no majority of these declarations saying the company policy is different than Mr. Flurry, the PMK of the company. They're all consistent. There's a few that say they occasionally took off-duty meal breaks. The district court acknowledged that. But he found, the district court found there's no common policy where people were provided off-duty meal breaks consistent with Brinker or the IWC wage order. So what do you have to, let me ask you this. I want to make sure I understand how your case is going to play out. So what do you, to win, what do you, to prevail on your claim, what do you have to show? The nature of the, well, I think we show the, the, our, it's the, one of the issues in this case is the defense. We just need to show that they weren't provided off-duty meals, and the defense has to show that those on-duty meals were legal. And to show the on-duty meals are legal, we believe, based upon the certification order, we can look at the nature of the work and that there's no evidence. The defendant mentioned several items that need, that it believes need to be confirmed. Do they get to, do they get to raise their nature of the work defense with respect to categories or individuals? Where, at what point do they raise their defense? They raise their defense now, and they didn't raise their defense now in terms of being able to show that it defeats certification, because they had their chance to show the different factors. Well, when you get to the merits, you have to, at some point, at some point you have to get to the merits, right? At some point you have to get to the merits. Certification is not the merits. It's not a merits determination. That's correct. If looking to see the method, the best method for handling the litigation, right? It's a procedural device that allows the case to be tried. So at some point, the judge is going to have to rule on the merits. My question was, to win, what do you have to show? One thing we, there's several things we can show. We have another theory that would support the district court opinion. I'll mention that. But we can show, just one example would be that the company chose to staff its model this way for a business decision purely for money reasons. They didn't want to do the several things they could have done, like schedule shorter shifts. If you schedule a six-hour or less shift, which would be outside of our class definition, then there would be no problem with meals. They could have staffed it double. They could have done, they could have paid the premiums. They could have allowed for relief. That's your response to their nature of the work. The nature of the work, they could basically, just like with overtime, there is a requirement to pay more if you want to do certain things. They didn't want to do those things, and they didn't want to pay more. We think it's the nature of the business, the nature of the financial reasons. But that would, we don't need to prove it necessarily that way. We just need to, they need to prove that it's the nature of the work, and we have to prove it's not the nature of the work. So you sat down and you've laid out a scenario, and they come back and say, oh, no, at X stores or whatever, the nature of the, just the nature of the service we're providing at a particular location is such that there has to be on-duty meals. We haven't, the district court looked at the evidence. Will the district court have to look at that? Maybe no, because so far there is no evidence. We don't know if there will ever be evidence. The defendant argues for all sorts of different necessity, they believe needs to be, things that need to be found. But in order to get to those questions, there needs to be some evidence. And so far, there's no evidence. The district court looked through a stack of 103 declarations that it can represent. It was extremely thick. That's the district court's rule, sorry, district court's role to look through those declarations.  But Mr. Fleury's deposition and declaration testimony were supported by the declarants, that what they say happened on the ground is what he said happened per policy and per the company's implementation of the policy through practice. The evidence is not there to get to the court's question of the nature of the work. Maybe some, maybe it will be there later. Maybe it won't. If it won't, then it will simply prevail on a class-wide basis. The company has a chance. Excuse me? And if they do present such evidence, then what happens? I can't say what will happen at that point because I don't have that evidence. That would be sort of me speculating what they might provide. But as I see right now, I see nothing to disturb the district court's decision on an abuse of discretion standard, no less, that there has been any evidence that commonality or predominance are defeated as the appellant's appeal was limited to on the meal period subclass. I guess more specifically, if they raise nature of the work defense, is it going to split into subclasses? Is it going to defeat class certification? We have no evidence, so it's hard to speculate what's going to happen. But perhaps, that's perhaps something that the district court can resolve at that time. This is a certification motion based upon the fact the district court had at that time. The U.S. Security Associates suggests different facts, but it's unfair to ask the district court to base its decision on speculation. It needs to base its decision on the facts. And the facts are, as it found, there was nothing to support. There's no nexus. The court went through that analysis in its reconsideration motion as well, that the defendant claims that some of these locations are off-duty. There's different facts that would require an on-duty meal period. And some of this is not another. We've heard that as well in oral argument today. That's, I think, called an alternative factual theory, because if you look at the declarations, which the district court did, the district court found that there was no evidence of a common practice of providing off-duty meals. In fact, it's all on-duty meals, and that the district court noted that 99.9 percent, and later a vast majority of the business of his U.S.S.A.'s business, consisted of single guard posts. He didn't know of a single post that has a lunch break as part of the program, because as part of the requirements assigned by the waiver, they cannot abandon posts. This is consistent with Vannoli and Wells Fargo, as well as the recent Wang case, which is that the court needs to look at all the facts. The court looked at all the facts and found that there is nothing to dissuade it from finding that certification is granted. The court addressed the argument that there's many different locations, many different clients, but it couldn't find any evidence provided by the company to suggest why those things mattered. There was no linking of that. The court used the term nexus, or they asked the question, how does that matter? And there was no evidence to suggest by the company that those facts, or conclusory speculation, as the court conclusions that the district court mentioned them as, actually linked to the nature of the work defense. And the court looked at the nature of the work defense as the Supreme Court, California Supreme Court, said it must under Brinker, which was to look directly at the IWC wage order as really the authority on this issue. And that's what the district court did. It looked at the IWC wage order and drew its decision from that. In the reconsideration opinion, the court explained how it did that, and I think the court was very prescient in finding a certification that complies with Dukes, complies with Wang, complies with Vannoli and Wells Fargo, and allows for basically an up or down decision at trial. And if there's facts that come out later, the court will deal with those facts. But as of now, the facts aren't there. The alternative theory we have as well, which would support the district court's decision for certification, is that the actual meal period waiver agreement is unlawful. The agreement … Well, it can't just be unlawful in the abstract, right? There's nothing unlawful about asking the employees when they first come on duty to sign that agreement. The agreements … What I mean by unlawful is that the agreement needs to follow the law. The agreement that the company has provided at one point said the nature of the work prevents employees from taking meal breaks. And then later, the ones that issue in our class period say that the nature of the work prevents … may prevent you from taking a meal break. So they changed the standard. The standard isn't in the IWC wage or the California Supreme Court, in the Brinker, that you may be prevented. The standard is that you are prevented. And the document they had everybody sign doesn't comply with the IWC wage orders, we believe, is our theory, agreement requires. That particular theory wasn't advanced in the complaint, though, was it? Well, I think the complaint doesn't explain necessarily every single theory for certification. I think that should be – this would be helpful for the district court to manage the case because it's another opportunity and it would support certification as a separate way of supporting certification. Did you advance that theory to the district court as part of the class certification motion? I don't think we spelled it out crystal clear. I don't think so either. But nonetheless, it would support … I mean, I guess you could on remand. I guess you could always. I mean … We don't think we need … Assuming that the certification order stands, I mean, you could always ask the district court to … Well, I think it would help the district court … … modify the complaint or to amend the class definition or whatever. I mean, there's a way you can raise it. Yes, I think the court should affirm. And then when it's sent back, this is another opportunity for the court to manage the case.  It's another way to manage the case. If the documents are improper, then it doesn't really matter what the nature of the work is because you need both the nature of the work and the writing. If the writing is invalid, then it doesn't really matter. Okay. That's another basis. I'd like to address some of the points my colleague made. You've got about two minutes. Yes. I think I've addressed those points, Your Honor. If there's no other questions, thank you. Thank you. Justice Pius, I think you hit the nail right on the head. What's that? What do the plaintiffs have to show to win? They have to show that in the first instance, an on-duty meal was required. At that point, the burden shifts to us for our affirmative defense, which we raised loudly and clearly in words of one syllable, that the nature of the work permits an on-duty meal. We are entitled to make that defense, as this Court determined this past Monday in Judge Fletcher's opinion in Wang v. Chinese Daily News, and I'm gilding the lily, but it says employers are also entitled to litigate any individual defenses they may have to class member's claims. In this case, if they say this person had to take an on-duty meal, we say, well, that's because the nature of the work at this post required him to take an on-duty meal, and we have to do that for 700 different locations. There is as broad an array of differences as I've ever seen in a class, and again, Judge Kobayashi, I direct this question to you because you're on the firing line. How do you determine the nature of the work in a medevac facility versus a Kmart, versus a hospice, versus a school, versus everything? Counsel, I guess the problem I have with that argument is that if we accepted it, it would seem to me to say that you're never going to be able to certify a class in a multilocation workplace. That's the logical – if we take your argument to its logical extreme, that's where we wind up, and I don't think that can be right. We can't take arguments to the logical extreme. Any argument can be taken to its logical extreme. All right. Tell me why we wouldn't go. Having said that, I mean, I guess the continua in this case, or our case, in Circle West, which is the other end of the spectrum, but I think there are things in between where there are some differences, but at some point you reach the tipping point. Maybe some other case it will be a lot closer case, but here we've got 700 different locations. Yeah, but the judge has evidence from your client's own person most knowledgeable suggesting that there is a remarkable similarity of circumstances across all 700 locations. Only in the sense that most of the places were single guard posts. There's no contention that a guard at Kmart is the same at a Navy hospital or a helicopter or anything in between. Clearly, that can't be the case. Right, but the nature of the work has to impact whether or not they can take these breaks or not. Correct. I agree with you that all of these locations, they have different needs, but they're all security guards in these locations. So just because there are multiple locations, as Judge Watford pointed out, and they may be doing different things in a hospital, they're all still security guards, and there's still this whole thing about whether they can be covered or not so that they can take their break. Isn't that the commonality? Yes and no, in a very broad, abstract sense, they're all guards.  If you're a guard at a woman's clothing store and there's somebody who can spell you, that's one thing. If you're working at the Navy to watch trucks coming in with hazardous materials, that's something that's very different. Well, doesn't it come down to whether somebody can replace you or not? Well, that argument, take it to its conclusion, would mean you'd never have an on-duty meal because you could always replace somebody. Somebody was working at a place in Nome, Alaska, I suppose you could send somebody up there and replace him. Clearly, the DLSE has examples that they've given of single guards. Actually, there was a woman who operated a gas station in late hours, and they said she couldn't leave because who knows when the people are coming in. They didn't say, well, they could have had somebody come and spell her. The question is, can you determine the issue? We're not to the merits. We're not determining the merits. The question is, can you do it in a manageable way on a class-wide basis? And I submit you simply cannot. The last thing I'll say is there was this talk about an abusive discussion. One of which is, as well as Fargo and other cases, has there been a clear error of judgment in weighing the correct mix of factors? In this case, I submit that the district court made a clear error of judgment in weighing whether you could determine this very complicated issue, multifactored issue on a class-wide basis. He looked heavily at your witness's declaration. Well, looking is one thing and appreciating is another, Your Honor, with all respect. I mean, you cannot look at these declarations as I see it and not see an incredible variety. What is it? Your 34B witness? What is it? Is that what it is? It was a designated witness, but he doesn't occupy at most, Mr. Fleury. He's the one who's designated. The one most knowledgeable. What can I say, Your Honor? What he said was, okay, I wrestle with this issue a lot. I said, what does it mean that it's a single-guard post? That's not the end of the inquiry. It's the beginning of the inquiry. Because a lot of people were they left, they took meals. But maybe you can convince the district court that that, you know, that just causes you to go in a different direction and therefore can't really maintain this particular kind of class, has to redefine it or modify it, subclass. I don't know. But the judge was acting on what the evidence, you know, what was before him. Well, that's true, but the judge made an error, Your Honor. Common issues simply do not predominate. Okay. Thank you very much. Thank you. Thank you. We appreciate your argument. It's an interesting case. Thank you very much. A matter of Abdullah v. U.S. Security Associates is submitted at this time.
judges: Kobayashi, Paez, Watford